---
Opinion.
---

# Richmond.

## DICE AND OTHERS V. SHERMAN.

### November 21, 1907.

### Absent, Cardwell, J.

1. EMINENT DOMAIN—*Public Use.*—Private property cannot be condemned "for the purpose of securing the necessary power to operate a public cider mill and the machinery of a certain public telephone exchange now on the land" of the petitioner, in the absence of any averment or proof of the public benefit to be derived therefrom. The private benefit of the petitioner too clearly predominates the public interest to justify the condemnation. The test of a public use is whether a public trust is imposed upon the property taken—whether the public has a legal right to the use which cannot be gainsaid, denied or withdrawn by the owner after the condemnation and appropriation.

Error to a judgment of the Circuit Court of Augusta county, in a condemnation proceeding. Judgment for the petitioner. Defendants assign error.

*Reversed.*

The opinion states the case.

*Charles Curry* and *T. K. Hackman,* for the plaintiffs in error.

*Timberlake & Nelson,* for the defendent in error.

HARRISON, J., delivered the opinion of the court.

The foundation of this proceeding was an application, under

section 1347 of the Code, to the circuit court of Augusta county by the defendant in error, for leave to erect a dam. The petition is brief, and in these words:

"Your petitioner, John W. Sherman, respectfully represents that he is the fee simple owner of a certain tract of land, situated at Burktown, in Augusta county, Virginia, on the waters of the stream commonly known as Naked Creek. On the opposite side of said creek is another tract of land belonging in fee simple to M. C. Dice, Mrs. K. Landes (formerly Dice), Miss Cornelia Dice, and Miss Annie C. Dice.

"Your petitioner desires to erect a dam across and in the said stream for the purpose of securing the necessary power to operate a public cider mill and the machinery of a certain public telephone exchange, now on the said land, belonging to the undersigned, and he prays that the court may grant him leave to erect such a dam, and to appoint five disinterested freeholders as commissioners, in the manner prescribed by law, to ascertain what will be a just compensation to the several owners of said land arising by reason of the erection of said dam, and to perform such other duties as may be required of them by law in this regard."

The proceedings had under this petition resulted in a judgment in favor of the applicant, condemning the lands of the plaintiffs in error, and authorizing the erection of the dam for the purposes set forth in the petition. The right to this judgment was vigorously contested in the circuit court, chiefly upon the ground that the erection of the dam in question would practically destroy the use of a mill a very short distance above, on the same creek, owned by the plaintiffs in error, which had been established and in operation for nearly one hundred years.

In the view we take of the case, this phase of the controversy need not be considered, for we are met at the threshold with a vital question, which arises on the face of the proceeding—that is, whether or not the judgment complained of is a taking

of private property for a private purpose, which is not authorized.

It will be observed, as shown by the application to the circuit court, that the defendant in error desires to secure the necessary power to operate a cider mill and the machinery of a telephone exchange, *now* on the land belonging to him. It is true, that in his petition he calls the structure or structures a "public cider mill," "and the machinery of a certain public telephone exchange," but there is nothing on the face of his petition, and not a word in the record, to show that the public has the slightest interest in either.

This court, in the recent case of *Fallsburg &c. Co.* v. *Alexander,* 101 Va. 98, 43 S. E. 194, 99 Am. St. Rep. 855, 61 L. R. A. 129, citing Lewis on Eminent Domain, and other authorities, says: "The test whether a use is public or not is whether a public trust is imposed upon the property, whether the public has a legal right to the use, which cannot be gainsaid or denied or withdrawn by the owner." It is there further said: "Strictly speaking, private property can only be said to have been taken for public uses when it has been so appropriated that the public have certain well-defined rights to that use secured, as the right to use the public highway, the public ferry, the railroad, and the like. But, when it is so appropriated that the public have no right to its use secured, it is difficult to perceive how such an appropriation can be denominated a public use." *Jordan* v. *Woodward,* 40 Me. 317.

In his work on Constitutional Limitations, p. 654, Judge Cooley says: "The public use implies a possession, occupation and enjoyment of the land by the public at large, or by public agencies; and the due protection to the rights of private property will preclude the government from seizing it and turning it over to another on vague grounds of public benefit to spring from a more profitable use to which the latter may devote it."

The *Fallsburg case, supra,* was much stronger than the case at bar for upholding the right to condemn, and this court

affirmed the judgment in that case, dismissing the proceeding as an attempt to condemn private property for private uses.

When the power of eminent domain is invoked, it must be made clearly to appear that the property sought to be condemned is useful to the public, and the existence or non-existence of a public use in any given case must be determined by the court. *Fallsburg case, supra; Varner* v. *Martin,* 21 W. Va. 550.

The purpose for which the property is sought to be taken in the case at bar does not clearly appear to be for a public use or public purpose. On the contrary, the grounds of public benefit upon which the taking is proposed, are vague, indefinite and uncertain, and the use which the public is to have of the property, or the manner in which it is to be benefited by such use, is by no means fixed and definite, and may be gainsaid, denied, or withdrawn, so far as the record shows, at the will of the defendant in error.

As said in the *Fallsburg case, supra,* "The private benefit too clearly dominates the public interest to find constitutional authority for the exercise of the power of eminent domain, and is the equivalent of taking private property for a private use, against the will of the owner, which cannot be done in any case."

The judgment complained of must, therefore, be reversed; and this court proceeding to enter such judgment as the circuit court ought to have entered, it is ordered that the petition there filed by the defendant in error be dismissed.

*Reversed.*