PATRICIA E. COLBY

V.

WILLIAM H. BOYDEN

Record No. 900552

January 11, 1991

Present: All the Justices

126

*Grover C. Outland, Jr. (Steven F. Shames; Outland, Gray, O'Keefe & Hubbard; Shames & Byrum*, on brief), for appellant.

*Peter C. Manson, Jr. (Martha D. Franklin; Pender & Coward,* on brief), for appellee.

JUSTICE LACY delivered the opinion of the Court.

In this case we determine the degree of negligence required to impose civil liability for injuries resulting from the actions of a police officer who violates traffic laws while pursuing a fleeing lawbreaker.

On January 6, 1987, Patricia E. Colby was driving her vehicle east on Pembroke Avenue in the City of Virginia Beach. As she approached the intersection of Independence Boulevard, the light controlling her lane turned green. She slowed, looked to the left and right, and, seeing or hearing nothing, proceeded into the intersection. In the middle of the intersection, her car was struck on the left side by a Virginia Beach Police Department vehicle operated by Officer William H. Boyden. As a result of the collision, Colby received serious and permanent injuries.

Shortly before the accident, Officer Boyden had observed a vehicle traveling south on Independence Boulevard run a red light at the intersection of Independence and Witchduck Road. He began to pursue the offender and activated his emergency blue lights. He saw the vehicle move from lane to lane at a high rate of speed and subsequently run the red light at the intersection of Independence and Pembroke. Continuing his pursuit, Officer Boyden activated his siren for a short burst as he neared the intersection of Pembroke and Independence. Although the traffic light was red, he proceeded to cross the intersection. As he entered the intersection he observed Colby's car also entering the intersection. Officer Boyden applied his brakes and swerved in an unsuccessful attempt to avoid the collision.

Colby filed a motion for judgment against Boyden and the City of Virginia Beach seeking damages for the injuries sustained in the accident. After non-suiting the City, Colby, in an amended motion, alleged one count of negligence and one count of gross negligence against Boyden. Boyden filed a special plea asserting the defense of sovereign immunity to the simple negligence count. Upon stipulated facts, the trial court sustained Boyden's plea and granted his motion for summary judgment, holding that, as a matter of law, Colby had failed to make out a *prima facie* case of gross negligence.

On appeal Colby raises three issues: (1) whether Officer Boyden was entitled to assert the defense of sovereign immunity; (2) whether Colby was required to prove gross negligence in order to recover; and (3) whether, as a matter of law, Colby failed to establish a *prima facie* case of gross negligence. We will consider the issues in order.

## Sovereign Immunity

Colby asserts that Boyden's actions involved in the pursuit of a speeding automobile were not entitled to the protection of sovereign immunity because they were ministerial acts and not acts which involved judgment and discretion. In support of this position Colby relies primarily on *Biscoe* v. *Arlington County*, 738 F.2d 1352 (D.C. Cir. 1984), *cert. denied*, 469 U.S. 1159 (1985), where the actions of an Arlington County police officer pursuing a fleeing suspect at high rates of speed into the District of Columbia were held to constitute ministerial acts.

The court in that case, however, was applying and construing the law of the District of Columbia, not the law of Virginia. The District's law, as explained by that court, provides complete immunity to agents of the government for tortious acts occurring in the performance of discretionary functions, but, if the act is one involving the " 'execution of policy as distinct from its formulation,' " it is ministerial, and the defense of immunity is unavailable. *Id.* at 1362 (citation omitted). Describing the officers' actions as the execution of the decision to pursue the fleeing automobile, the court concluded that the officers' actions were ministerial and, therefore, not entitled to sovereign immunity. *Id.* at 1363.

■ The court's holding in *Biscoe* is not persuasive when considering the doctrine of sovereign immunity as applied in Virginia. The doctrine's availability and the protection it affords individuals to whom it applies differs substantially in the two jurisdictions. In Virginia, a government agent entitled to the protection of sovereign immunity is not immunized from suit. Rather, the degree of negligence which must be shown to impose liability is elevated from simple to gross negligence. *See James* v. *Jane*, 221 Va. 43, 53, 282 S.E.2d 864, 869 (1980); *Sayers* v. *Bullar*, 180 Va. 222, 229, 22 S.E.2d 9, 12 (1942).

■ In Virginia, as in the District, the question of whether a particular act is entitled to the protection of sovereign immunity

depends upon whether the act under consideration is classified as discretionary or ministerial in nature. Our resolution of that question, however, goes beyond determining whether the act constitutes the formulation or execution of policy.

■ The Virginia rule, which was applied by the trial court, is not that of *Biscoe*, but rather it is the four-factor test enunciated in *James, supra*, and reiterated in *Messina v. Burden*, 228 Va. 301, 321 S.E.2d 657 (1984), *Lentz v. Morris*, 236 Va. 78, 372 S.E.2d 608 (1988), and *Gargiulo v. Ohar*, 239 Va. 209, 387 S.E.2d 787 (1990). The four factors are: (1) the nature of the function the employee performs; (2) the extent of the government's interest and involvement in the function; (3) the degree of control and direction exercised over the employee by the government; and (4) whether the act in question involved the exercise of discretion and judgment. *Messina*, 228 Va. at 313, 321 S.E.2d at 663.

■ This is the first instance in which we have had occasion to apply this analysis to the actions of a police officer engaged in vehicular pursuit.[1] Enforcement of traffic laws is not only a primary governmental function of a municipality, but one in which the municipality is inextricably involved through financial, personnel, and policy initiatives. A municipality enjoys sovereign immunity for acts undertaken in furtherance of this function. Boyden was involved in the performance of this function for the City of Virginia Beach at the time of the accident, thereby satisfying the first two elements of the test.

■ The City exercised administrative control and supervision over Officer Boyden's activities through the promulgation of guidelines governing actions taken in response to emergency situations. However, those guidelines do not, and cannot, eliminate the requirement that a police officer, engaged in the delicate, dangerous, and potentially deadly job of vehicular pursuit, must make prompt, original, and crucial decisions in a highly stressful situation. Unlike the driver in routine traffic, the officer must make difficult judgments about the best means of effectuating the governmental purpose by embracing special risks in an emergency situation. Such situations involve necessarily discretionary, split-second decisions balancing grave personal risks, public safety

---

[1] The issue of the applicability of sovereign immunity was not before us in *Meagher v. Johnson*, 239 Va. 380, 389 S.E.2d 310 (1990).

concerns, and the need to achieve the governmental objective. The exercise of discretion is involved even in the initial decision to undertake the pursuit, as the *Biscoe* court recognized. *See Biscoe*, 738 F.2d at 1363.

■ While each case must be evaluated on its own facts, to hold that Officer Boyden's acts here were merely ministerial, thereby denying him the protection of the sovereign immunity defense for the actions complained of in this case, not only ignores the realities of the circumstances under which he performed his job, but also would inhibit law enforcement officers faced with similar decisions regarding vehicular pursuit in the future. Applying the four-part test of *James*, we concur with the trial court that the defense of sovereign immunity was applicable to Officer Boyden's actions in this case.

## Breach of Duty - Degree of Negligence

■ Under Virginia law, where, as here, a defendant's actions are clothed with sovereign immunity, a plaintiff must establish gross negligence in order to prevail. *James*, 221 Va. at 53, 282 S.E.2d at 869; *Sayers*, 180 Va. at 229, 22 S.E.2d at 12. However, relying primarily on the language of Code § 46.1-226,[2] its predecessors, and the cases decided thereunder, Colby asserts that the standard applicable to Officer Boyden in this case is "that degree of reasonable care of a prudent man in discharge of official duties of a like nature under the circumstances." Colby argues that only a showing of simple negligence is required to impose civil liability under the statute, and that the trial court erred in requiring proof of gross negligence. We disagree.

■ Section 46.1-226 provides that persons driving vehicles in certain emergencies, under certain conditions, are not subject to criminal prosecution for traffic violations such as speeding or running red lights. Subsection (b) of that section provides that this exemption applies only if conditions regarding signaling mechanisms and liability insurance are met.[3]

---

[2] Code § 46.1-226, effective at the time of the accident, was amended and recodified as part of § 46.2-920. Acts 1989 c. 727. The provisions are substantially identical.

[3] While the trial court did not expressly rule that Officer Boyden's actions brought him within the coverage of § 46.1-226, we will assume, without deciding, that his actions complied with the requirements for coverage under the section in order to address this part of Colby's argument.

*cal Structures*, 213 Va. 355, 192 S.E.2d 799 (1972), *Fairfax County* v. *Cities Service*, 213 Va. 359, 193 S.E.2d 1 (1972), and *Notestein* v. *Board of Supervisors of Appomattox County*, 240 Va. 146, 393 S.E.2d 205 (1990).

In *Medical Structures*, the County Board of Zoning Appeals issued a special use permit to Medical Structures' predecessor in title, allowing it to build a nursing home on its property. Medical Structures purchased the property for $250,000, which reflected the value of the special use permit, and filed a site plan as a prerequisite to the issuance of a building permit. The County notified Medical Structures that zoning amendments, which had been enacted after Medical Structures acquired the property, prohibited approval of its site plan. We held

> that where, as here, a special use permit has been granted under a zoning classification, a bona fide site plan has thereafter been filed and diligently pursued, and substantial expense has been incurred in good faith before a change in zoning, the permittee then has a vested right to the land use described in the use permit and he cannot be deprived of such use by subsequent legislation.

213 Va. at 358, 192 S.E.2d at 801.

In *Fairfax County* v. *Cities Service*, the County Board of Zoning Appeals issued a special use permit to City Engineering and Development Company, Cities Service's predecessor in title. The permit authorized Cities Service to construct and operate a gasoline station on its property. After the permit had been issued, the Board changed the zoning classification of the property to a classification which did not permit the construction of a gasoline station. The County argued that a vested right in a zoning classification could not be created until a building permit had been issued and the permittee had made substantial expenditures or had substantially changed his position in reliance thereon. Cities Service argued that substantial expenditures in reliance upon an existing zoning classification and the issuance of a special use permit created a vested right, which could not be impaired by a subsequent change in zoning. Relying upon our holding in *Medical Structures*, we held that Cities Service's right to the land use described in the use permit vested upon the filing of the site plan. 213 Va. at 362, 193 S.E.2d at 3.

■ In *Notestein*, we considered whether the owners of a landfill had acquired a vested right to develop and operate a non-hazardous waste landfill on their property. When the Notesteins began to pursue the process of developing the landfill, no zoning ordinance existed which would have prohibited them from developing and/or operating a landfill on their property. The County subsequently adopted a new zoning ordinance which created numerous zoning classifications and which placed the Notesteins' property in an agricultural classification in which a landfill was not a permitted use. We applied the legal principles that we articulated in *Medical Structures* and held that the Notesteins had not acquired a vested right in the land classification which existed before the enactment of the zoning ordinance. We stated:

> In both cases [*Medical Structures* and *Cities Service*], a governmental entity had committed a significant official act: the issuance of a permit which allowed the permittee to conduct a 'use' on its property which otherwise would not have been allowed. Unlike the landowners in *Medical Structures* or *Cities Service*, the Notesteins did not identify a significant official governmental act to support their claim of a vested property right.

240 Va. at 152, 393 S.E.2d at 208.

■ Application of the principles that we articulated in *Medical Structures*, *Cities Service*, and *Notestein* shows that the trial court erred when it held that Russell had acquired a vested right in the zoning classification which existed before the zoning amendment was enacted. Unlike the developers in *Medical Structures* or *Cities Service*, Russell had not obtained any type of governmental permit or approval. Even though Russell had filed a proposed subdivision plat and a site plan, neither the plat nor the plan had been approved by the local planning commission as required by Code § 15.1-475.*

---

* § 15.1-475 states, in part:

    Whenever the owner or proprietor of any tract of land located within any territory to which a subdivision ordinance applies desires to subdivide the same, he shall submit a plat of the proposed subdivision to the local commission of the . . . municipality . . . .

    The local commission . . . shall act on any proposed plat within sixty days after it has been officially submitted for approval by either approving or disapproving such plat in writing, and giving with the latter specific reasons therefor. Specific reasons

Therefore, we hold that Russell did not acquire a vested right in the zoning classification which existed before the ordinance was amended in January 1987. Accordingly, we will reverse the judgment of the trial court and dismiss the proceeding.

*Reversed and dismissed.*

for disapproval may be contained in a separate document or may be written on the plat itself. The reasons for disapproval shall identify deficiencies in the plat which cause the disapproval by reference to specific duly adopted ordinances, regulations, or policies and shall generally identify such modifications or corrections as will permit approval of the plat.