450

## CIRCUIT COURT OF FAIRFAX COUNTY

Deon Couplin,
Janice Johnson,
and Jasmine Johnson

 v.

Metropolitan Washington
Airport Authority et al.

July 19, 2007

Consolidated Cases CL-2003-218892,
CL-2004-224574, CL-2004-224573

BY JUDGE ARTHUR B. VIEREGG

By letter opinion of June 6, 2007, I announced my decision granting the motions for summary judgment of State Farm Mutual Automobile Insurance Company and Dollar Thrifty Automotive Group, Inc. (collectively, "UM Carriers"). The Plaintiffs, Deon Couplin, Janice Johnson, and Jasmine Johnson (collectively, "Plaintiffs"), moved for a reconsideration of that decision. Based on briefs filed with this court, I granted those motions and

invited the UM Carriers to file responsive briefs. They did so. The Plaintiffs thereafter filed reply briefs. After considering the arguments presented, my decision follows.

## I. *Background*

This case arises out of injuries suffered by Plaintiffs when the car in which they were riding was struck by an ambulance owned by the defendant Metropolitan Washington Area Transit Authority ("MWATA") and operated by defendant Aubrey Payne, a MWATA employee. Although Plaintiffs concede MWATA is immune from suit, enjoying sovereign immunity pursuant to Va. Code § 5.1-173(B), they pursued this action against Payne and the UM Carriers, their own liability insurers.

In 2005, the Honorable R. Terrence Ney granted Payne's plea in bar and dismissed the negligence claims against him reasoning that the statutory sovereign immunity to which MWATA was entitled pursuant to Va. Code § 5.1-173(B) extended to MWATA's agents such as Payne. On appeal, the Supreme Court of Virginia held Va. Code § 5.1-173(B) did not afford statutory immunity to MWATA's agents and employees. *See Couplin v. Payne*, 270 Va. 129, 135-36 (2005) ("*Couplin I*"). In so holding, the Court, relying on *Colby v. Boyden*, 241 Va. 125 (1991), and *Friday-Spivey v. Collier*, 268 Va. 384 (2004), declared:

> In Virginia, a government agent entitled to the protection of *sovereign immunity* is not immunized from suit. Rather, the degree of negligence which must be shown to impose liability is elevated from simple to gross negligence.

*Couplin I* at 136 (emphasis added) (quoting *Colby v. Boyden*, 241 Va. 125 (1991). Furthermore, the Court noted in a footnote:

> The application of *sovereign immunity* for a governmental employee where gross negligence is not alleged, is controlled by the principle enunciated in *James v. Jane*, 221 Va. 43 (1980), and *Messina v. Burden*, 228 Va. 301 (1984).

270 Va. at 136, n. 4 (emphasis added, parallel cites omitted). The Court accordingly held that Payne did not enjoy the statutory immunity enjoyed by MWATA. *See id.* at 136. The Court reversed and remanded the Plaintiffs' action against both Payne and the UM Carriers for further proceedings in this court.

Upon remand, Payne filed a plea in bar contending the case against him should be dismissed because his actions did not constitute gross negligence. A jury returned a verdict so finding. An order dismissing Payne was entered. Therefore, only plaintiffs' uninsured motorist claims against the UM Carriers based on Payne's ordinary negligence survived. In support of these claims, Plaintiffs contend Payne was an uninsured motorist for purposes of the Virginia Uninsured Motorist Statute. *See* Va. Code § 38.2-2206 (sometimes hereinafter referred to as the "UM Statute.").

The UM Carriers filed the motions for summary judgment to dismiss those remaining uninsured motorist claims, which I granted for the reasons set forth in my June 6, 2007, letter opinion. The Plaintiffs' motions for reconsideration of that ruling are presently before me.

## II. *UM Carriers' Motion for Summary Judgment*

The UM Carriers principally[1] contend Plaintiffs may only recover from the UM Carriers if Plaintiffs are entitled to recover from Payne individually. Relying on *Colby v. Boyden*, 241 Va. 125 (1991), State Farm claims that, since Payne could only be liable for gross negligence and was found by a jury not to have been grossly negligent, the UM Carriers are not derivatively answerable in damages for the Plaintiffs' injuries.

---

[1] Dollar Thrifty also contends that two species of *res judicata* defenses require the dismissal of Plaintiffs' claims against the UM Carriers. Those defenses are *res judicata-bar* and *collateral estoppel*. Each, however, subject to other elements, preclude the relitigation of previously litigated facts (or facts that might previously have been litigated) by the same parties or their privies. *See e.g., Bates v. Devers*, 214 Va. 667, 670-71 (1974). Dollar Thrifty's argument first fails because the same action is not being adjudicated: the subject of the plea in bar was limited to whether or not Payne was guilty of gross negligence. The crux of the present claims action against the UM Motorists, unlike that brought against Payne and resolved by the plea in bar, is whether or not Payne was guilty of ordinary negligence. Further, the parties are not the same. The plea in bar was litigated between the Plaintiffs and Payne, but not the UM Carriers. In addition, Dollar Thrifty does not contend, nor seemingly can it, that Payne and the UM Carriers are privies. *See Kesler v. Fentress*, 223 Va. 14, 17 (1982) ("It is generally held that `privy' means a mutual or successive relationship to the same rights of property, or such an identification in interest of one person with another as to represent the same legal rights, and the term `privy,' when applied to a judgment or decree refers to one whose interest has been legally represented at the trial.") (quoting *Patterson v. Saunders*, 194 Va. 607, 613 (1953)). The UM Carriers are simply derivatively liable for Payne's actions because of their insurance contracts with the Plaintiffs. I conclude that Dollar Thrifty's *res judicata* defenses are wholly without merit. They will not be further addressed in this letter opinion.

In opposition, Plaintiffs maintain that, since Payne, an employee of a government agency involved in a governmental function when his operation of a motor vehicle harmed Plaintiffs, could not be liable for ordinary negligence, as was decided in *Couplin I*, he is, to that extent, an "immune" operator pursuant to Va. Code § 38.2-2206(B)(v). They, therefore, contend that irrespective of the fact that Payne was determined by a jury not to be grossly negligent, the UM Carriers are liable for injuries suffered by the Plaintiffs as a consequence of Payne's ordinary negligence in the event such ordinary negligence can be proved at trial.

In addition to the foregoing, one set of Plaintiffs, the Johnsons, argue that the Honorable Kathleen H. MacKay already decided the issue of whether the UM Carriers are potentially liable under the UM Statute when she entered an order finding that Payne was not grossly negligent (in accordance with the jury's verdict) and providing:

> Adjudged and ordered that judgment be and hereby is entered in favor of Defendant Aubrey Payne, and it is further adjudged and ordered that this case is otherwise continued keeping Defendant Payne listed as the nominal Defendant only, so that Plaintiffs herein may continue to pursue claims that Defendant Payne was negligent, with any judgment resulting from said claims to be entered against "Immune Defendant," as provided for in Va. Code Ann. § 38.2-2206(F).

These Plaintiffs, therefore, contend that the issue of whether Payne is an "immune" operator within the meaning of Va. Code § 38.2-2206(B)(v) is a matter decided and has become "the law of the case." A review of the file, however, does not reflect that this issue was argued before Judge MacKay when that order was entered. Furthermore, even if it had been, it did not preclude a later judge from deciding that the UM Carriers were not subject to liability as a matter of law. *See Turner v. Wexler*, 244 Va. 124, 128 (1992) ("A trial court is empowered to change a legal determination as long as it retains jurisdiction over the proceedings before it."). Concluding that this argument is without merit, it will not be further addressed in this letter opinion.

Thus, the dispositive issue before me is whether or not an employee who by his ordinary negligence injures another while operating a motor vehicle for a governmental employer is an "immune" operator within the meaning of the Virginia Uninsured Motorist Statute to the extent he is exempt from liability for simple negligence pursuant to common law sovereign

immunity principles. For the reasons that follow, I reverse my previous ruling and conclude that such an employee is an "immune" operator as that term is used in Va. Code § 38.2-2206(F).

## III. *Decision*

In pursuing uninsured motorist claims against the UM Carriers, Plaintiffs rely upon Va. Code §§ 38.2-2206(A), (B), and (F). They contend Va. Code § 38.2-2206(A) requires that all primary Virginia motorist liability policies must contain a provision affording personal injury and property damage coverage to the owners of such policies, their families, and permissive users of insured vehicles, and for injuries and losses caused to them by uninsured motorists. *See generally Bayer v. Travelers Indemnity Co.*, 221 Va. 5 (1980). In 1997, the Virginia General Assembly amended the definition in § 38.2-2206(B) of an "uninsured motor vehicle" to include a vehicle "for which . . . . (v) the owner or operator of the motor vehicle is immune from liability for negligence under the laws of the Commonwealth or the United States, in which case, the provisions of subsection F shall apply and the action shall continue against the [UM] insurer." Plaintiffs contend Payne was an immune operator and, therefore, the vehicle he was driving was an uninsured vehicle within the meaning of § 38.2-2206(B)(v).

Section 38.2-2206(F), which affords uninsured motorist coverage for injuries or damages suffered from an accident with an "immune" motorist, provides:

> Notwithstanding the provisions of subsection A, the immunity from liability for negligence of the owner or operator of a motor vehicle shall not be a bar to the insured obtaining a judgment enforceable against the [UM] insurer for the negligence of the immune owner or operator, and shall not be a defense available to the insurer to the action brought by the insured, which shall proceed against the named defendant although any judgment obtained would be enforceable against the insurer and any other non-immune defendant.

The above-quoted language makes plain that an uninsured motorist carrier will be liable to compensate its insureds to the extent of applicable policy limits for injuries caused by the negligent operation of a vehicle by an operator notwithstanding that driver's immunity from liability.

The Virginia statutory uninsured motorist scheme mandates (in the absence of waiver and certain other inapplicable circumstances) the inclusion of uninsured motorist coverage in Virginia motor vehicle liability policies. *See* Va. Code § 38.2-2206(A). Such mandated coverage ensures that insureds under such liability policies must be indemnified for personal injuries and property damage for which an owner or operator of such an uninsured motor vehicle is liable. *See id.* The uninsured motorist scheme defines an "[u]ninsured motor vehicle" as a vehicle falling into one of five categories. *See* Va. Code § 38.2-2206(B)(i)-(v). The only such subsection relevant to the issues before this Court is subsection (v), which defines an uninsured vehicle as one as to which "the . . . operator . . . is immune from liability under the laws of the Commonwealth or the United States." Va. Code § 38.2-2206(B)(v). This definitional provision declares that, in the event an operator is so immune, the suit related to damages caused by his operation of such uninsured vehicle shall proceed against the uninsured motorist insurer pursuant to Va. Code § 38.2-2206(F). Section 38.2-2206(F) further provides that the immunity of an uninsured motorist does not preclude the plaintiff from recovering a judgment against the uninsured motorist carrier; that any judgment would be entered in the name of "Immune Defendant"; and that such judgment would be enforceable only against the uninsured carrier.

The first step in deciding whether or not Payne was an "immune" operator within the meaning of Va. Code § 38.2-2206(B)(i)-(v) and (F) is to determine whether the statutory terms, "immune" and "immunity," are ambiguous when accorded their "ordinary and usually accepted meaning[s]." *See Virginia Employment Comm'n v. Fitzgerald*, 19 Va. App. 491, 495 (1995) (quoting *Woolfolk v. Commonwealth*, 18 Va. App. 840, 447 (1994)). In accordance with well-recognized principles of statutory construction, where the language of a statute is not ambiguous, the court must give each of the words in the statute their plain meaning. *See Brown v. Lukhard*, 229 Va. 316, 321 (1985). "Language is ambiguous when it may be understood in more than one way or when such language refers to two or more things at the same time." *Salzi v. Virginia Farm Bureau Mut. Ins. Co.*, 263 Va. 52, 55-56 (2002).

To be "immune" or to have "immunity" is the condition of being "exempt from" or "protected against"; it is synonymous with "not subject to." *See Webster's New World Dictionary of the American Language* (2d College ed. 1980). As applied to an operator such as Payne, he plainly did not enjoy total immunity as a MWATA ambulance driver. As the Supreme Court of Virginia determined in *Couplin I*, Payne was liable for injuries caused by his

gross negligence though he was legally immune from liability for injuries caused by his ordinary negligence in accordance with common law sovereign immunity principles.

I now conclude the terms "immune" and "immunity," as employed by the General Assembly in the Uninsured Motorist Statute, are subject to two interpretations. The first is that these terms apply only to operators of vehicles subject to total immunity for their driving conduct. The second is that they apply to operators with any immunity, whether that immunity be total or only partial, so long as the operator's partial immunity applies to the driving conduct under consideration. These alternatives are precisely the type of statutory language the Supreme Court of Virginia defined in *Salzi* as ambiguous: language that "may be understood in more than one way" or "language [which] refers to two or more things at the same time." Therefore, rules of statutory construction are necessary to determine the legislature's intent in employing the words "immune" and "immunity" in the UM Statute.

A cardinal rule of construing Virginia statutory law is that the General Assembly is presumed to know the common law. *See Wicks v. Charlottesville*, 215 Va. 274, 276 (1974). "The statute must therefore be read along with the provisions of the common law, and the latter will be read into the statute unless it clearly appears from express language or by necessary implication that the purpose of the statute was to change the common law." *Id.* Thus, it may be presumed that, in enacting Va. Code § 38.2-2206(F), the General Assembly knew that a government employee performing a governmental function could be held personally liable for gross, but not ordinary, negligence. *See Colby*, 241 Va. at 132 (a police officer performing governmental duties enjoying sovereign immunity is only liable for acts of gross negligence).

A second cardinal rule of construing Virginia statutory law is that the General Assembly is presumed to know the pronouncements of the Supreme Court of Virginia. *See Waterman v. Halverson*, 261 Va. 203, 207 (2001) ("General Assembly is presumed to be aware of the decisions of this Court when enacting legislation."). Since the Supreme Court of Virginia has explicitly distinguished between statutory and common law sovereign immunity (*see Colby*, 241 Va. at 128 (recognizing common law sovereign immunity without reference to statutory sovereign immunity), it must be presumed the General Assembly was fully aware of this distinction when it enacted Va. Code § 38.2-2206(F).

Furthermore, as Plaintiffs contend, the Uninsured Motorist Statute is a remedial statute intended to be liberally construed in order to protect innocent motorists through their own insurers from motorists not answerable in

damages. *See e.g., State Farm Mut. Auto. Ins. Co. v. Brower*, 204 Va. 887 (1964). Plainly, the 1997 enactment of Va. Code § 38.2-2206(B)(v) and (F) was intended to protect innocent motorists from the negligence of drivers who were immune from liability for the consequences of their driving conduct. Second, there is no apparent logical reason why the General Assembly would deny an injured innocent motorist the benefits of the Uninsured Motorist Statute simply because the negligent party is afforded partial but not total immunity. Such a construction runs afoul was the oft-cited rule that, in construing statutes, courts should avoid interpretations that result in unreasonable or absurd results. *See VEPCO v. Citizens for Safe Power*, 222 Va. 866, 869 (1981); *Vollin v. Arlington County Electoral Bd.*, 216 Va. 674, 679 (1976).

I, therefore, conclude that an "immune" operator (or an operator with "immunity") for purposes of the Virginia uninsured motorist scheme includes an operator of a vehicle like Payne, who is only partially exempt from liability for his ordinary negligence. In my earlier letter opinion, I noted that the following *dicta* in *Welch v. Miller & Long Co. of Md.*, 258 Va. 447 (1999), might suggest that only unlimited immunity such as the sovereign immunity of a state or local government was intended by the "immunity" language of UM Statute:

> In this context, the terms ["immune" and "immunity" used in Va. Code § 38.2-2206] contemplate *total exemption from tort liability, such as that generally enjoyed by state and local governments*. In the present situation, the tortfeasors were not exempt from liability. Rather, they, and their workers' compensation insurance carrier, were strictly liable to the plaintiff for payment of workers' compensation benefits.

*Welch*, 258 Va. at 452 (emphasis added). I conclude that, since Payne is wholly immune from liability given the present posture of this case and given the entirely different context addressed in *Welch*, i.e., the possible conflict between the UM Statute and the Virginia Workers' Compensation Statute, that my prior reliance on *Welch* was misplaced.

I, therefore, conclude that, since Payne was immune from liability for gross negligence, the UM Statute authorizes suit against the UM Carriers.

### IV. *Conclusion*

For the foregoing reasons, I conclude that my earlier opinion letter granting summary judgments in favor of the UM Carriers was wrongly decided. I have accordingly entered an order vacating those summary judgment orders. Counsel for the parties are directed to appear before a calendar control officer of this court within the next two weeks to set this case for trial.