# CIRCUIT COURT OF THE CITY OF PORTSMOUTH

Cynthia M. Bailey

    v.

Keniesha L. Lewis et al.

October 5, 2012

Case No. (Civil) CL11-1029

BY JUDGE DEAN W. SWORD, JR.

This matter comes before the court upon an Amended Complaint seeking damages as a result of an automobile accident and upon a Demurrer and Special Plea of Sovereign Immunity filed on behalf of the defendant, Justin Matthews.

Upon the facts and reasons stated hereafter the court grants the plea of sovereign immunity and dismisses the complaint as to Justin Matthews. (Because the court believes this defendant is entitled to the defense of sovereign immunity, the demurrer becomes moot.)

*Facts*

At a hearing held before the court certain facts that relate to this issue and this defendant were stipulated by counsel.

The defendant, Matthews was at all relevant times a sworn police officer employed by the police department of the City of Chesapeake, Virginia. As such he was subject to all applicable policies and procedures promulgated by his employer.

The facts further established Matthews was employed "off duty" by another defendant, Virginia Extreme Force, Inc. (hereafter "Extreme Force"), to direct traffic at its place of business on George Washington Highway in Chesapeake, Virginia. However, this defendant was dismissed from the case by order entered on August 2, 1012.

The cause of action arose while the plaintiff was leaving the parking lot of "Extreme Force" under the direction of Matthews which caused a collision with another vehicle driven by the defendant Lewis. The allegations of the plaintiff are based upon "simple negligence" of the defendants Matthew and Lewis.

It is further stipulated that, at the time of the accident, Matthews was, as required by police policy, dressed in full uniform with all required equipment, just as if he were on duty.

## Sovereign Immunity

The rule of sovereign immunity is alive and well in Virginia when appropriate factual circumstances arise. Thus, it is accurate to state that government agents acting within the scope of their employment are immune from lawsuits based upon simple negligence if the acts are discretionary and not ministerial in nature. *Colby v. Boyden*, 241 Va. 125 (1991); *Messina v. Burden*, 228 Va. 301 (1984); and *James v. Jane*, 221 Va. 43 (1980).

In *Colby, supra,* at pp. 125 and 129, the Supreme Court established a four part test to determine whether a given defendant is entitled to immunity: "(1) the nature of the function the employee performs; (2) the extent of the government's interest and involvement in the function; (3) the degree of direction and control exercised over the employee by the government; and (4) whether the act in question involved the exercise of discretion and judgment."

We need to address each prong of the test.

## The Nature of the Function

The case of *Glenmar Cinestate v. Farrel*, 223 Va. 728, 729 (1982), held that directing traffic is a public duty even when the police officer was engaged "off-duty" by a private employer.

While not factually on point, the Court of Appeals has also found that an "off-duty" police officer employed by a private employer was engaged in public duties when he enforced trespass laws on private property he was hired to secure. *Oulds v. Commonwealth*, 1999 Va. App. LEXIS 545 (citing *Key v. Commonwealth*, 21 Va. App. 311, 315 (1995)).

In each of these cases, as in the matter at hand, the officers were in full uniform and were working "off-duty" with the permission of their respective employers.

## Governmental Interest

As to governmental interest, once again we refer to the *Colby, supra,* matter for guidance.

The Supreme Court found that the "enforcement of traffic laws is not only a primary governmental function of a municipality, but one in which the municipality is inextricably involved. . . . A municipality enjoys sovereign immunity for acts undertaken in furtherance of this function." *Colby*, at p. 125; see also *Freeman v. City of Norfolk*, 221 Va. 57, 60 (1980).

## Degree of Direction and Control

This aspect requires that we look to the policies and procedures established by the Chesapeake Policy Department.

As a part of the hearing, it was agreed that department policy number 1.2.8 would be made a part of the record. (Matthews Exhibit 4.) This policy establishes the rules and procedures relating to "off-duty employment" obtained by police officers.

As a preamble, it should be noted that authority for such comes first from Virginia Code § 15.2-1712 which authorizes localities to adopt ordinances relating to off-duty employment by local law-enforcement officers and, secondly, Chesapeake City Code § 2-284 delegates this authority to the chief of police and authorizes him to "promulgates rules and regulations applying to such off-duty employment."

An examination of the policy reveals a closely regulated control over off-duty work by the city through its chief of police. A summary of the policy reveals that an officer must complete departmental training, make application to the chief for his requested employment, have the type of employment as well as the prospective employer approved, have the employment supervised by appropriate department officials, and reserves the right in the chief to terminate the employment if the officer violates policy or even if the employment is determined not to be in the best interest of the police department.

Once approval is obtained, the policy requires that: (1) the officers are subject to the same legal authorization and limitations as when on-duty; (2) they must respond to a request for aid from a citizen; (3) they are limited as to other off-duty work; (4) if needed, they must forego the off-duty employment and respond to an emergency; (5) they must notify police dispatch as to the location and duration of the off-duty work; and (6) immediately assume on-duty status should they arrest someone. The policy also requires an officer engaged in security related work to wear a full policy uniform including his weapon.

## Exercise of Discretion and Judgment

This issue is the subject of *Stanfield v. Peregoy*, 245 Va. 229 (1993). The direction of this case defines the question of discretion as whether the agent is required to make "judgments about the best way to effectuate the

government purpose." *Stanfield*, at p. 343. In this opinion the Supreme Court used three examples of when discretion should or should not apply: (1) when a police officer was in hot pursuit and must decide whether he should not stop for a red light; (2) the fireman summoned to a fire and not stopping at a set of train tracks; (3) a sheriff's deputy serving process but after completing his task had an accident. In the first two examples, the court determined the officer and the fireman had to make a decision as to how best to carry out a governmental purpose. In the case of the process server, the purpose was completed, and, thus, there was no immunity.

The act of regulating and directing traffic required Matthews to determine the best way to regulate traffic flow, and, combined with the *Glenmar, supra*, decision finding regulation of traffic to be a governmental function, we find he was using discretion and judgment.

By applying the *Colby* rule, we can easily come to a decision that an on-duty police officer would be entitled to immunity in a case such as this. However, Matthews was working off-duty and no Virginia case has addressed the application of the rule to an off-duty officer.

A police officer engaging in off-duty work is still performing police work when he directs traffic. While he is not being paid by the city, he is conferring all of the same benefits to the well being of the local citizens that would exist if the police department had dispatched an "on-duty" officer to direct traffic at this location. Under the applicable policies, the officer is subject to the same rules as an on-duty officer and, if required, provides the same services.

## Public Policy

In considering public policy issues, we should first look to see what, if anything, the General Assembly has done by way of statutory enactment.

Virginia Code § 8.01-195.3 is generally considered to be "the tort claims act" that allows for certain tort actions against the Commonwealth. While this statute allows certain causes of action against the Commonwealth or any transportation district, it is a limited waiver of immunity with a number of exceptions, most telling "nor shall any provision of this article be applicable to any county, city, or town in the Commonwealth or be so construed as to remove or in any way diminish immunity of any county, city, or town in the Commonwealth."

Following familiar rules of construction, the Supreme Court has recently held "Only the General Assembly can determine as a matter of policy whether the Commonwealth's sovereign immunity should be abrogated. . . . In reviewing a statute, courts will conclude that the General Assembly has taken such action abrogating the Commonwealth's sovereign immunity only when the statutory language has explicitly and expressly announced

such a waiver." *Ligon v. County of Goochland*, 279 Va. 312, 317 (2010) (citations omitted).

The Supreme Court, in considering the issue, has further observed "The doctrine of sovereign immunity serves a multitude of purposes including but not limited to protecting the public purse, providing for smooth operation of government, eliminating public inconvenience and danger that might spring from officials being fearful to act, assuring that citizens will be willing to take public jobs, and preventing citizens from improperly influencing the conduct of governmental affairs through the threat or use of vexatious litigation." *Afzall v. Commonwealth*, 273 Va. 226, 231 (2007) (citations omitted).

While not all of these policy considerations apply to our case, some do and offer support for application of the rule to Matthews. However, the strongest policy argument is the fact that the General Assembly has declined to modify the rule, and, until it does, sovereign immunity is a viable doctrine.

The final issue is the real question: whether Matthews is truly an "independent contractor" for this purpose or simply whether he is a police officer performing his regular duties at the request of a private employer for an agreed compensation with the approval and permission of the police department.

One case may answer this question. *Ogunde v. Prison Health Services*, 274 Va. 55, 60 (2007), was a tort action against a private contractor employed by the DOC. One of the defenses raised was sovereign immunity even though the defendant was an independent contractor. Sovereign immunity was unavailable, but the controlling factor was the definition of an independent contractor used by the court. Citing *Epperson v. DeJarnette*, 164 Va. 482, 486 (1935), the Supreme Court defined independent contractor as "a person who is employed to do a piece of work without restriction as to the means to be employed and who employs his own labor and undertakes to do the work according to his own ideas, or in accordance with plans furnished by the person for whom the work is done, to whom the owner looks only for results."

Interestingly, the defendant "Extreme Force" was dismissed from the case upon the theory that Matthews was an independent contractor and, therefore, the principle of respondeat superior did not apply. This dismissal was made without serious objection from the plaintiff, and, based upon the stipulations presented to the court, I entered the dismissal order.

If we look to the relationship between Matthews and his real employer, the police department, it is far less clear that Matthews meets the definition of an independent contractor. When we refer back to all of the restrictions imposed upon Matthews by his department, it is hard to come to any conclusion other than he was acting as a police officer in every way except his private compensation arrangement.

Without running a laundry list of the rules imposed by the department, which are part of the record, it is clear he does not perform his private security work "without restriction" or "using his own ideals"; police training in how to direct traffic was required. Matthews was also required to give the public the appearance that he was a police officer by wearing his full uniform. All of these things would probably make the department liable for his actions but for the sovereign immunity rules that apply to the City.

Upon a consideration of all of these things, I can draw no logical distinction between Matthews as an "on-duty" officer and as an "off-duty" officer in this factual situation.

The appellate court in Georgia has addressed this precise issue and, while it was obviously using Georgia law, it came to the conclusion that, in a factually identical case, sovereign immunity applied. See *Sommerfield v. Blue Cross*, 235 Ga. App. 375, 377 (1998).

Under our statutory and common law, this defendant is entitled to sovereign immunity, and I so find.