PRESENT: All the Justices[1]

EMMANUEL WORSHIP CENTER, ET AL.

v. Record No. 201322

CITY OF PETERSBURG

OPINION BY
JUSTICE WILLIAM C. MIMS
JANUARY 6, 2022

FROM THE CIRCUIT COURT OF THE CITY OF PETERSBURG
Joseph M. Teefey, Jr., Judge

In this appeal, we consider whether the circuit court properly dismissed a bill of review, after holding that the underlying matter was an action at law and there was no legal error in its decision to issue a decree of sale.

## I.  BACKGROUND

In August 2018, the City of Petersburg ("the City") brought a complaint against the Emmanuel Worship Center and its trustees (collectively "EWC") for delinquent taxes, seeking a decree of sale and appointment of a special commissioner pursuant to Code §§ 58.1-3965 and 58.1-3969.  On May 20, 2019, the circuit court found that, as of April 15, 2019, EWC owed the City $29,288.95 for delinquent real estate taxes due through June 30, 2015, and penalties and interest thereon through April 15, 2019.  The court further found that EWC could not challenge this tax delinquency because the three-year statutory period to challenge an erroneous assessment pursuant to Code § 58.1-3984 had expired.  The court then issued a decree of sale, ordering EWC's property be sold to the pay the delinquent taxes, penalties, interest, and costs.

EWC did not appeal the circuit court's ruling.  Instead, on August 22, 2019, EWC paid, under protest, the accumulated taxes, penalties, interest, and fees in the amount of $114,059.10

---

[1] Chief Justice Lemons presided and participated in the hearing and decision of this case prior to the effective date of his retirement as Chief Justice on December 31, 2021.  Justice Goodwyn was sworn in as Chief Justice effective January 1, 2022.

for redemption of its property. On November 15, 2019, within six months of entry of the decree of sale, EWC filed a bill of review in the circuit court pursuant to Code § 8.01-623. EWC asked the circuit court to review its May 20, 2019 decree of sale and to reverse, modify, or nullify it, and award it the amounts paid to the City to redeem its property, including attorneys' fees.

EWC argued it was exempt from paying real estate taxes under Article X, Section 6(a)(2) of the Constitution of Virginia because the property at issue was owned and used exclusively for religious purposes. EWC asserted that this tax exemption was self-executing, and because the City did not have an ordinance in place to monitor exempted property, EWC had not been required to apply for an exemption. Lastly, EWC argued that the three-year statute of limitations under Code § 58.1-3984 was not applicable.

The City filed a motion to dismiss the bill of review. It argued that a bill of review was not a valid pleading in this matter because that mechanism is a procedure used to reopen suits in equity, and this case involved an action at law. According to the City, the applicable statute to challenge the City's assessment of real property is Code § 58.1-3984, which states "all proceedings pursuant to this section shall be conducted as an action at law." Additionally, the City argued that EWC had failed to obtain leave of court before filing the bill of review, and that a bill of review was not appropriate because there was no error of law apparent from the face of the record and no newly discovered evidence. The City asked the court to dismiss the bill of review as frivolous.

EWC opposed the motion to dismiss, arguing it had presented a proper case for a bill of review because the error of law was apparent from the record and, therefore, leave of court was not required. EWC asserted the property was exempt from real estate taxation pursuant to a self-

2

executing exemption. EWC did not respond to the City's assertion that the underlying matter involved an action at law instead of equity.

The circuit court held a hearing on July 6, 2020. Counsel for EWC admitted they sought a bill of review because they failed "to properly perfect [their] appeal." EWC agreed that a bill of review is not frequently used, but nevertheless argued it was "a [procedural] mechanism that is still recognized and still on the books." EWC asserted that there was a legal error in the decree of sale because the property in question was exempt from taxation, and that the applicable exemption was self-executing.

The City responded that the circuit court had heard these arguments in the previous matter, and contended that a bill of review was not appropriate because this was not an equity case. Rather, the City asserted that this was a challenge to an erroneous assessment under Code § 58.1-3984, which is an action at law. EWC replied that a final decree is "issued through an operation of equity," and "selling a person's property is an equitable action … not a legal remedy."

The circuit court entered a final order on July 31, 2020, denying the bill of review. The court held the bill of review was not properly before it because the underlying action "was an action at law and such a bill is utilized solely to review suits in equity." The court further held there was no error of law in the underlying matter. This appeal ensued.

## II. ANALYSIS

EWC challenges the circuit court's holdings that the underlying matter was an action at law and that there was no error in its decision to issue the decree of sale.

3

## A. Standard of Review

This appeal involves issues of statutory interpretation, which are questions of law we review de novo. *CVAS 2, LLC v. City of Fredericksburg*, 289 Va. 100, 108 (2015).

## B. Bill of Review

"A bill of review is a well established procedure that is used to reopen a suit in equity after the final decree has been rendered." W. Hamilton Bryson, Bryson on Virginia Civil Procedure § 12.05[4], at 12-24 (5th ed. 2017). While the bill of review is still an available procedural device, we have noted that it is "limited in scope," "rarely utilized in Virginia procedure," and "discouraged" in modern proceedings "wherein most litigants have a statutory right to appeal from judgments of trial courts." *Blunt v. Lentz*, 241 Va. 547, 550 (1991). Code § 8.01-623 states that "[i]n no case shall such a bill [of review] be filed without the leave of court first obtained, unless it be for error of law apparent upon the face of the record."

In its final order, the circuit court held the bill of review was not properly before it because the underlying matter "was an action at law." However, the record demonstrates the underlying action was filed by the City pursuant to Code § 58.1-3965 to sell EWC's property to collect delinquent real estate taxes. Code § 58.1-3965 is located in Chapter 39, Article 4, which is titled, "Bill in Equity for Sale of Delinquent Tax Lands." In relevant part, it provides:

> When any taxes on any real estate in a locality are delinquent on
> December 31 following the second anniversary of the day on
> which such taxes have become due …, such real estate may be sold
> for the purpose of collecting all delinquent taxes on such property.

Code § 58.1-3965(A). Code § 58.1-3967 sets forth how these proceedings are instituted, who the necessary parties are, and what should be done with any surplus. Code § 58.1-3967 states, "[p]roceedings under this article for the appointment of a special commissioner under § 58.1-

4

3970.1 or the sale of real estate on which county, city, or town taxes are delinquent *shall be by bill in equity.*"  Code § 58.1-3967 (emphasis added).

In addition to the plain language of Code §§ 58.1-3965 and 3967, we recently confirmed that this type of action is an equitable one.  In *CVAS 2, LLC v. City of Fredericksburg*, we held that an appeal from a decree of sale issued by a circuit court for delinquent real estate taxes under Code § 58.1-3965 was "an equitable claim, even though that claim is statutory in nature."  289 Va. at 109.  We noted that the General Assembly "has the power to define the statutory rights it creates to be of a legal or equitable nature," and had determined that "the sale of real estate on which county, city, or town taxes are delinquent shall be by bill in equity."  *Id*.

The City's underlying action was brought by a bill in equity.  Therefore, the circuit court erred in holding that the underlying action was a matter at law and that a bill of review was inappropriate.  Accordingly, we will reverse this ruling by the circuit court.

### C.  Decree of Sale

In denying the Bill of Review, the circuit court also held that after reviewing the record, it found no error of law in the underlying action where it issued the Decree of Sale.  On appeal, EWC argues there were two legal errors apparent upon the face of the record below.  First, EWC argues the circuit court erred when it concluded EWC's property was subject to taxation by the City.  Second, EWC argues the circuit court erred when it held EWC could not challenge the delinquent real estate taxes because the statute of limitations to do so had expired.

*Tax Exempt Status*

EWC argues the circuit court erred when it concluded EWC's property was subject to taxation during the years in question.  EWC contends its property is exempt from taxation pursuant to Article X, Section 6(a)(2) of the Constitution of Virginia, and that this exemption is

self-executing. The City responds that the circuit court properly denied the bill of review on this point because the property was not "automatically exempted" from taxation. Rather, the City contends that EWC was required to apply to the City Assessor for a determination whether it was entitled to an exemption.

Article X, Section 6(a)(2) of the Constitution of Virginia provides that "property owned and exclusively occupied or used by churches or religious bodies for religious worship" shall be exempt from state or local taxation. Code § 58.1-3606 states the General Assembly's interpretation of the term "religious worship" in the Constitution and does so expansively, as set forth below:

> A. Pursuant to the authority granted in Article X, Section 6 (a)(6) of the Constitution of Virginia to exempt property from taxation by classification, the following classes of real and personal property shall be exempt from taxation:
> . . . .
> 2. Real property and personal property owned by churches or religious bodies, including (i) an incorporated church or religious body and (ii) a corporation mentioned in § 57-16.1, and exclusively occupied or used for religious worship or for the residence of the minister of any church or religious body, and such additional adjacent land reasonably necessary for the convenient use of any such property. Real property exclusively used for religious worship shall also include the following: (a) property used for outdoor worship activities; (b) property used for ancillary and accessory purposes as allowed under the local zoning ordinance, the dominant purpose of which is to support or augment the principal religious worship use; and (c) property used as required by federal, state, or local law.

EWC is correct that we have referred to this exemption as "self-executing." In *Warwick County v. Newport News*, 153 Va. 789, 806 (1930), we construed the former constitutional provision for tax-exempt property and held that all property is liable to taxation, "unless exempted by the self-executing provisions of the Constitution, section 183." *Id*. The Attorney General has also issued two opinions referring to this exemption as "self-executing" or

6

"automatic."  The first is a detailed opinion from 1984 discussing various tax exemptions and the impact of the 1971 revisions to the Constitution on those exemptions.  1984 Op. Atty. Gen. 353, 1984 WL 184387 (Feb. 14, 1984).  In that opinion, the Attorney General stated:

> The exemptions authorized in the 1971 Constitution, Art. X, §§ 6(a)(1) through 6(a)(4) for publicly owned property, church property, nonprofit cemeteries, public libraries and nonprofit institutions of learning are:
> 1. *Self-executing*;
> 2. Do not depend upon §§ 58-12(1) through 58-12(4); and
> 3. Must be strictly construed, even as to the property of governments and churches.

*Id.* at *11 (emphasis added).  The second opinion, issued in 1993, addressed whether a city's delay in recognizing the tax-exempt status of property acquired by a religious organization was legally proper.  1993 Op. Atty. Gen. 244, 1993 WL 494573 (Oct. 20, 1993).   The Attorney General opined that Section 6(a)(2) provided for an "*automatic exemption* of 'real estate and personal property owned and exclusively occupied or used by churches or religious bodies for religious worship or for the residences of their ministers.'"  *Id.* at *1 (emphasis added).

Although property owned by a religious organization for worship is exempt from taxation by localities, localities are required to maintain an inventory of all tax-exempt property and keep a record of such information, along with the fair market value of such property.  Code § 58.1-3604.  Further, Code § 58.1-3605 authorizes localities to "require by local ordinance any entity, except the Commonwealth, any political subdivision of the Commonwealth, or the United States, which owns real and personal property exempt pursuant to this chapter to file triennially an application with the appropriate assessing officer as a requirement for retention of the exempt status of the property."

These authorities establish that the tax exemption for property owned by religious organizations is "automatic" or "self-executing," *unless* a locality chooses to exercise its

7

authority under Code § 58.1-3605 to pass an ordinance requiring such entities to file an application every three years to retain the property's exempt status. During the years in question, however, the City did not have such an ordinance.[*] Therefore, the self-executing provision of Article X, Section 6(a)(2) of the Constitution of Virginia governed. Any properties used for "religious worship" in the City that qualified for tax-exempt status under Article X, Section 6(a)(2), as defined by Code § 58.1-3606, were automatically exempt from taxation during the years in question.

EWC asserts that its property, which it refers to as a "learning annex," qualified for this automatic exemption. During oral argument the City disagreed, arguing the exemption only applies to property used for "worship and housing." We disagree with the City's narrow interpretation of the exemption. As explained above, Code § 58.1-3606 contains an expansive definition of religious worship that, in addition to "worship and housing" includes "property used for outdoor worship activities," "property used for ancillary and accessory purposes" that "support[s] or augment[s] the principal religious worship use", and "property used as required by federal, state, or local law." Code § 58.1-3606(A)(2).

Based upon the record before us, we are unable to determine whether EWC's property in question would qualify for this exemption. We note that it appears EWC attempted to proffer evidence of its use that would qualify for tax-exempt status, but the circuit court never gave EWC an opportunity to present that evidence. Instead, the circuit court agreed with the City's

---

[*] In 2019, the Petersburg City Code was amended to include a new ordinance that requires "[a]ny organization that claims exemption for a real estate parcel pursuant to Article X, Section 6 of the Virginia Constitution . . . shall make their request on forms provided by the city assessor" and that "[s]uch applications for exemption shall be reviewed by the city assessor to determine if the organization qualifies for an exemption." *See* Petersburg City Code § 106-138(i) (November 15, 2019).

argument that even if EWC's property was exempt from taxation, EWC failed to challenge the tax assessment within the three-year limitations period provided by Code § 58-3984, and therefore the assessments for the years in question were beyond review by the court.

*Statute of Limitations*

In the decree of sale, the circuit court held that the amount due on the delinquent real estate taxes through June 30, 2015 was "not subject to challenge by Defendants, the statutory period for challenge pursuant to Virginia Code § 58.1-3984 having expired." Code § 58.1-3984(A) provides that any person aggrieved by a local tax assessment may, "within three years from the last day of the tax year for which any such assessment is made, . . . apply for relief to the circuit court of the county or city wherein such assessment was made." In these proceedings, "the burden of proof shall be upon the taxpayer to show that the property in question is valued at more than its fair market value or that the assessment is not uniform in its application, or that the assessment is otherwise invalid or illegal." *Id.*

EWC does not dispute that more than three years have passed since the assessments in question were issued. Under Code § 58.1-3984, EWC would be barred by the three-year statute of limitations from bringing an action against the City to challenge the validity of the assessments. However, EWC's inability to initiate a legal challenge under this statute does not end the inquiry. Despite the City's argument to the contrary, just because EWC can no longer initiate a lawsuit against the City does not mean EWC cannot raise the self-executing tax exemption as a defense to the City's attempt to sell the property in a tax sale.

Code § 58.1-3940 gives localities the right to enforce real property taxes by sale under Article 4 (Code § 58.1-3965 *et seq*.) for twenty years after the assessments were due. However, before a circuit court may issue a decree of sale under Code § 58.1-3965, the court must find the

9

taxes are "delinquent." Code § 58.1-3965. That requires a determination whether the taxes were even owed in the first place. If the locality was never entitled to tax the property, there would be no "delinquent" taxes. In this case, however, the court refused to consider EWC's defense, holding that EWC was barred by the statute of limitations under Code § 58.1-3984 from raising this defense.

If the City's interpretation of Code § 58.1-3984 were correct, a locality could issue an assessment against any tax-exempt property – including churches, public libraries, non-profit cemeteries, or any other property exempt from taxation under Article X, Section 6 of the Constitution of Virginia. If that entity did not proactively respond by initiating a legal challenge under Code § 58.1-3984 within three years, a locality would then be able to seek a tax sale of that otherwise tax-exempt property for up to twenty years after the assessment because that entity could no longer raise its tax-exempt status as a defense to a tax sale.

When interpreting statutes, courts "ascertain and give effect to the intention of the legislature." *Chase v. DaimlerChrysler Corp.,* 266 Va. 544, 547 (2003). That intent is usually self-evident from the words used in the statute. *Id.* Consequently, courts apply the plain language of a statute unless the terms are ambiguous, *Tiller v. Commonwealth,* 193 Va. 418, 420, (1952), or unless applying the plain language would lead to an absurd result. *Cummings v. Fulghum,* 261 Va. 73, 77 (2001). A statute's plain language leads to "absurd results" when it produces illogical or anomalous results. *See, e.g., Colby v. Boyden*, 241 Va. 125, 132 (1991) (adopting a litigant's preferred construction of a statute "is illogical and not required" where it leads to an "anomalous result); *Diehl v. Butts*, 255 Va. 482, 488 (1998) (refusing to apply statute according to litigant's preferred interpretation because the procedure it called for would be "illogical"). The City's argument that the three-year limitations period in Code § 58.1-3984

means a property owner can no longer even raise a *defense* to a delinquent tax charge after three years would clearly lead to absurd results, since localities can bring these suits for up to twenty years. Therefore, we hold the circuit court erred in ruling that EWC could not assert a defense to the City's allegation of delinquent taxes.

### III. CONCLUSION

In summary, we conclude the circuit court erred when it dismissed the bill of review. First, the court erred when it held the underlying action was an action at law. Second, the court erred when it held that because more than three years had passed since these taxes were assessed, they were beyond review and EWC could not raise any defenses to the assessments. We will remand this matter to the circuit court for a determination whether the property in question was used for religious worship as defined in Code § 58.1-3606, and consequently whether EWC owed any delinquent taxes for the property.

*Reversed and remanded.*